USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/7/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Fatumata TOURAY,

Petitioner,

-against-

Kenneth GENALO, Field Office Director of Enforcement and Removal Operations, New York Field Office, Immigration & Customs Enforcement; David VENTURELLA, Acting Director, Immigration and Customs Enforcement; Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, U.S. Attorney General.

Respondents.

26 Civ. 8370 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, Fatumata Touray, petitions for a writ habeas corpus following her detention by Respondents (the "government") for third-country removal. *See* Pet., ECF No. 1; *see also* Opp., ECF No. 11; Reply, ECF No. 15. For the reasons stated below, Touray's petition is GRANTED.

**BACKGROUND**

Touray is a 47-year-old citizen of the Gambia, Pet. ¶¶ 1, 12; So Decl. ¶ 5, ECF No. 12, where she was subjected to female genital mutilation, an attempted forced marriage, and threats on her life. I-589 Pet. at 5, ECF No. 15-1. Touray was admitted to the United States on July 30, 1996, So Decl. ¶ 6, and is a longtime resident of New York City. Pet. ¶ 1; Touray Decl. ¶ 1, ECF No. 15-2.

On March 9, 2009, Touray filed an application for asylum and withholding of removal with the U.S. Citizenship and Immigration Services ("USCIS"). So Decl. ¶ 8; I-589 Pet. at 1. In April 2009, USCIS commenced removal proceedings against her. So Decl. ¶¶ 9–11. On August 19, 2011, an immigration judge entered an order of removal to the Gambia and simultaneously granted withholding of removal, *id.* ¶ 12; *see also* ECF No. 13-3 (immigration judge's order), based on the

judge's finding that "Touray's life or freedom was likely to be threatened if she were removed to [the] Gambia." Reply at 1. Touray did not appeal, and she was not detained by U.S. Immigration and Customs Enforcement ("ICE") or placed on an order of supervision following the order. So Decl. ¶¶ 7, 12.

Fifteen years later, on September 15, 2026, ICE "mailed [Touray] a Form G-56" call-in letter, requiring her to report to 26 Federal Plaza for a check-in on September 24, 2026. *Id.* ¶ 17. At the check-in, ICE arrested Touray. *Id.* ¶ 19. She was transferred to New Jersey the same day and then transported to the South Louisiana ICE Processing Center in Basile, Louisiana, on September 25, 2026. *Id.* ¶¶ 21–23.

ICE intends to deport Touray to Sierra Leone, which "accepted [Touray] for a third-country removal." *Id.* ¶¶ 18, 20. Touray states that she first learned this when the government filed its opposition in this case. Touray Decl. ¶¶ 4–5.[1] She also expresses fear that she will again be subjected to female genital mutilation in Sierra Leone, that she will be persecuted for her resistance to the practice, and that a visa-exemption treaty between Sierra Leone and the Gambia "would make it easier for Sierra Leone to return [her] to [the] Gambia or allow [her] persecutors from [the] Gambia to find [her] in Sierra Leone." *Id.* ¶ 6. Because "Sierra Leone has given diplomatic assurances" that individuals deported from the U.S. "will not be persecuted or tortured," the government argues that Touray "has no right to an additional opportunity to raise a fear claim" prior to removal. Opp. at 18; *id.*, Ex. E.

On September 24, 2026, Touray filed the instant petition through her next friend Salim Drammeh, *see* Pet. at 21, and on September 25, 2026, the Court administratively stayed Touray's

[1] The government claims that it "advised [Touray] that ICE intend[ed] to remove her to a third country, namely, Sierra Leone" upon arrest, but does not claim that it provided written notice and does not state whether Touray was explicitly told her intended destination or merely that she would be removed to a third country. So Decl. ¶ 20.

transfer or removal outside of this District, the Eastern District of New York, or the District of New Jersey, *see* ECF No. 4. Upon learning that Touray had already been transferred to Louisiana, the Court ordered the government to return Touray to one of the foregoing districts in aid of further proceedings. *See* ECF Nos. 6, 9, 14.

## DISCUSSION

### I. Availability of Relief

The government argues that Touray's petition must be denied because (1) certain provisions of the Immigration and Nationality Act ("INA") bar jurisdiction, and (2) Touray cannot litigate her claims individually because they duplicate the class action lawsuit *D.V.D. v. Dep't Homeland Sec.*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025). *See* Opp. at 7. The Court considers these threshold issues in turn.

#### A. Jurisdiction under the INA

The government argues that this Court lacks jurisdiction under the INA to consider the petition because: (1) the INA channels claims arising from removal proceedings into "petitions for review" filed with the Court of Appeals, 8 U.S.C. §§ 1252(a)(5), (b)(9); and (2) the INA prohibits courts from hearing claims arising from decisions to execute removal orders, 8 U.S.C. § 1252(g). *See* Opp. at 9–10.

##### 1. Sections 1252(a)(5) and (b)(9)

Under the INA, district courts lack jurisdiction to "review . . . an order of removal entered or issued under any provision of this chapter," which includes "review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States." *Delgado v.*

*Quarantillo*, 643 F.3d 52, 54–55 (2d Cir. 2011) (per curiam) (quoting 8 U.S.C. §§ 1252(a)(5), (b)(9)). These provisions "preclude the district court's entertaining of a direct challenge to a removal order" and actions "indirectly challenging [an] order of removal." *Id.* at 55. However, not all claims with a "relationship to pending removal proceedings . . . themselves challenge removal proceedings." *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025) (internal quotation marks and citation omitted). "[O]verlap, even substantial substantive overlap, does not make [a habeas] claim arise out of [a removal proceeding]." *Id.* at 400. The Supreme Court has cautioned that §§ 1252(a)(5) and (b)(9) must be construed narrowly to avoid "absurd" results, such as making constitutional claims "effectively unreviewable." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018).

2. Section 1252(g)

The government also contends that § 1252(g) deprives the Court of jurisdiction. "Section 1252(g) prohibits courts from 'hear[ing] any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General [or Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.'" *Ozturk*, 136 F.4th at 396 (quoting 8 U.S.C. § 1252(g)). Section 1252(g) is directed "against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 485 n.9 (1999). As such, both the Supreme Court and the Second Circuit have explained that § 1252(g) imposes only a "narrow[]" jurisdictional bar. *Id.* at 482; *see also Ozturk*, 136 F.4th at 396; *Fulton v. Noem*, No. 25-194, at 2 (2d Cir. Apr. 30, 2025) (order granting stay of removal pending appeal and concluding that § 1252(g) does not bar review of challenges to the manner of removal).

Section 1252(g) bars judicial review of only "three discrete actions": decisions to "commence proceedings, adjudicate cases, or execute removal orders." *AADC*, 535 U.S. at 482 (quoting 8 U.S.C.

§ 1252(g)). "[M]any other decisions or actions that may be part of the deportation process" are nonetheless reviewable by district courts because they do not fall within the three discrete powers covered by § 1252(g). *Id.* "[C]laims seeking review of the legality of a petitioner's detention" are among those "not subject to the § 1252(g) bar on judicial review." *Ozturk*, 136 F.4th at 397 (quoting *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023)). And a district court retains jurisdiction over a habeas petition even if only part of the requested relief falls outside § 1252(g). *See id.* at 397 n.6.

3. Application

Neither of the foregoing provisions bar review of Touray's petition. Because Touray is detained for the purpose of removal, without notice or opportunity to raise a fear-based claim, to a country not contemplated in her original removal proceedings, her petition does not "aris[e] from . . . [a] proceeding brought to remove an alien from the United States" under § 1252(b)(9), or from a "decision or action . . . [to] execute [a] removal order[] against any alien" under § 1252(g).

With respect to §§ 1252(a)(5) and (b)(9), Touray's petition does not "challenge the lawfulness of the removal order [itself]." *Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 225 (S.D.N.Y. 2019). Nor does Touray "challeng[e] the decision . . . to seek removal [or] any part of the process by which [her] removability will be determined." *Jennings*, 583 U.S. at 294. Rather, Touray challenges the lawfulness of detaining her years after the entry of an order of removal, to effect removal "to a country not identified in the removal order," without additional process. *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 26-1212, 2026 WL 2797801, at *11 (1st Cir. Sept. 18, 2026), *cert. granted*, No. 26-426, 2026 WL 2917860 (U.S. Sept. 29, 2026) (mem.). Because this issue can be resolved without assessing the validity of the underlying removal proceeding, §§ 1252(a)(5) and 1252(b)(9) do not deprive this Court of jurisdiction. *See Delgado*, 643 F.3d at 55 (distinguishing

between habeas petitions that assess the constitutionality of "the underlying administrative order of removal" and those that do not).

The government's argument amounts to "uncritical literalism leading to results that no sensible person could have intended." *Jennings*, 583 U.S. at 293–94. Under the government's interpretation, Touray's detention for third-country removal is "effectively unreviewable," *id.* at 293, because removal to Sierra Leone was not contemplated during the underlying proceedings, Touray Decl. ¶¶ 3–5, and Touray's "right to file a petition for review of her decades-old removal order has long since expired." Reply at 4. The INA does not require this "absurd" result. *Jennings*, 583 U.S. at 293; *see also Zhang v. Genalo*, 814 F. Supp. 3d 307, 320 (E.D.N.Y. 2025).

With respect to § 1252(g), the government's argument similarly fails. The government contends that the petition falls within the three discrete actions covered by § 1252(g) on the ground that it challenges the execution of a removal order. Opp. at 14–15. But "removal to a country not mentioned in one's order of removal is not 'execution' of the removal order under § 1252(g)." *D.V.D.*, 2026 WL 2797801, at *7 (citing *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025)). "If anything, it arises from the decision or action *not* to execute the country-designation aspect of the removal order." *Id.*

The Court, therefore, has jurisdiction over Touray's petition.

B. Impact of *D.V.D.* Litigation

The government contends that relief is "barred because Petitioner is a class member of [the *D.V.D.* litigation], and she cannot seek individual relief here." Opp. at 19. The government is mistaken.

1. Rule 23

"[A] judgment in a properly entertained class action," *once entered*, "is binding on class members in any subsequent litigation." *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984). Before a judgment is entered, separate lawsuits by individual class members may be dismissed as duplicative of the class action. *See, e.g., Adams v. Tracy*, No. 21 Civ. 33, 2024 WL 1109091, at *4 (N.D.N.Y. Mar. 14, 2024) (noting magistrate judge's recommendation that the plaintiff "be directed to show cause . . . why the [c]ourt should not dismiss this case as duplicative if [p]laintiff is still a class member in [a class action lawsuit addressing the same issues]"); *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296 (E.D.N.Y. 1985), *aff'd in part, rev'd in part*, 818 F.2d 226 (2d Cir. 1987) ("Some attorneys filed individual lawsuits on behalf of their clients, but those cases have been dismissed as duplicative of the class action."). But dismissing duplicative litigation is discretionary, not mandatory. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("[A] district court *may* stay or dismiss a suit that is duplicative of another federal court suit." (emphasis added)). Moreover, dismissing a class member's individual lawsuit as duplicative is inappropriate if it asserts different rights or seeks different relief from the class action. *See Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (explaining that, for the rule against duplicative litigation to apply, "the case must be the same" with the "same relief prayed for" (citation omitted)).

2. Application

The *D.V.D.* litigation does not provide a basis for dismissing Touray's petition.[2] First, the litigation is ongoing, and the district court's injunction barring third-country removals was stayed. *See Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025) (staying injunction). *D.V.D.*, therefore, has no preclusive effect on class members. *See Cooper*, 467 U.S. at 874.

[2] The Court assumes that Touray is a *D.V.D.* class member for the purpose of this analysis.

Additionally, Touray's petition is not the "same case" as *D.V.D. Sacerdote*, 939 F.3d at 504 (citation omitted). The *D.V.D.* litigation seeks to "declare [DHS's third-country removal] policies unlawful and to set them aside, to enjoin DHS from continuing to fail to provide meaningful advanced notice in writing and the opportunity to present a fear-based claim to an [immigration judge] prior to any deportation to a third country, and to order DHS to return . . . class members who have been deported without these procedural protections." Complaint ¶ 6, *D.V.D. v. U.S. Dep't Homeland Sec.*, 821 F. Supp. 3d 102 (D. Mass. 2025) (No. 25 Civ. 10676), *aff'd in part, vacated in part*, 2026 WL 2797801, *cert. granted*, 2026 WL 2917860, ECF No. 1. In contrast, Touray "is asserting [her] individual claims, based on [her] individual circumstances, rather than claims for systemic relief." *D.J.R.R. v. Genalo*, No. 26 Civ. 3124, 2026 WL 1746716, at *8 (E.D.N.Y. June 17, 2026) (citation omitted), *appeal docketed*, No. 26-2306 (2d. Cir. Aug. 18, 2026). She also seeks different relief, notably release from detention. *See* Reply at 7–8; *Sacerdote*, 939 F.3d at 504 (explaining that litigation is not duplicative if it seeks different relief). Recognizing these distinctions, courts across the country have addressed habeas claims by petitioners threatened with third-country removal "without evident concern that doing so encroached on the *D.V.D.* court's jurisdiction." *Dia v. Raycraft*, No. 26 Civ. 1054, 2026 WL 1476507, at *5 (W.D. Mich. May 27, 2026) (collecting cases). The fact that *D.V.D.*'s injunction is stayed, *see* 2026 WL 2917860, further counsels in favor of hearing Touray's petition. *See Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025) (finding it "counterintuitive that non-opt-out class membership . . . could prevent individuals from making their own claims for due process while [an] injunction is stayed on a class-wide basis").

Finding that no threshold issues bar review of Touray's petition, the Court proceeds to the merits.

II. Merits

Touray has demonstrated that her detention is unlawful, because 8 U.S.C. § 1231(a)(6), the statutory provision the government cites for its authority to detain her, Opp. at 5–6, cannot justify holding her in custody.

A. Detention under § 1231(a)(6)

Individuals with a final order of removal are subject to detention under 8 U.S.C. § 1231. Once a noncitizen's order of removal becomes administratively final, ICE has a 90-day period, known as the removal period, to secure the noncitizen's removal. § 1231(a)(1). Detention is mandatory during the removal period. § 1231(a)(2). If ICE fails to effectuate the noncitizen's removal, § 1231(a)(6) authorizes permissive detention of certain noncitizens "beyond the removal period." § 1231(a)(6). This language "provides for a period of continued detention" when a noncitizen is already in custody, not "a free-roaming right to arrest and detain people any time it sees fit, even [more than] a decade after the fact." *Diallo v. Joyce*, 817 F. Supp. 3d 202, 205 (S.D.N.Y. 2025). Additionally, to comport with the Due Process Clause, the Supreme Court has read § 1231(a)(6) to include a presumptive six-month limit on detentions following the removal period, and to require release of a noncitizen when there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

The government must also provide sufficient process with respect to immigration detention to satisfy the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez v. Decker*, 978 F.3d 842, 851–55 (2d Cir. 2020). To determine whether due process is satisfied, the court balances: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the [g]overnment's interest, including the

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

B. Application

Touray was never previously detained or subject to an order of supervision, So Decl. ¶ 7, and "the 90-day removal period triggered by [her final removal order] is long past." *Parra v. Favro*, No. 26 Civ. 363, 2026 WL 1030870, at *5 (N.D.N.Y. Apr. 16, 2026). As a result, her detention cannot be "continued" under § 1231(a)(6). *Diallo*, 817 F. Supp. 3d at 205. The government, therefore, lacks a statutory basis to arrest and detain her. *Id.* at 204–08; *see also Parra*, 2026 WL 1030870, at *4 (collecting cases holding that § 1231(a)(6) does not authorize detention years after the 90-day removal period ends).

Although § 1231(a)(6) does not preclude the government from "briefly detain[ing a noncitizen] for purposes of effecting [their] removal" if removal is "*imminent*," *Diallo*, 817 F. Supp. 3d at 208, that narrow exception does not apply to Touray because her planned removal violates due process. *Cf. Navarro-Maury v. Hermosillo*, No. 26 Civ. 333, 2026 WL 1413166, at *4 (W.D. Wash. May 20, 2026) (explaining that "the relevant question is whether [a] *lawful* removal is foreseeable—not whether the government could effectuate an unlawful removal absent judicial oversight" (emphasis in original) (internal quotation marks and citation omitted)).

"To comply with due process, the [g]overnment must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country." *Castillo Rivas v. Bondi*, No. C26-0134, 2026 WL 295705, at *5 (W.D. Wash. Feb. 4, 2026). The government also "has an affirmative obligation to make a determination regarding a noncitizen's claim of fear before deporting him." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019). "[I]f a noncitizen claims fear of removal to a designated

third country, the [g]overnment must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge." *Castillo Rivas*, 2026 WL 295705, at *5; *accord D.J.R.R.*, 2026 WL 1746716, at *8.

The government's stated intention to rely on generalized assurances from Sierra Leone that it will not torture deportees, and to afford Touray "no right to an additional opportunity to raise a fear claim," Opp. at 18, does not comply with these standards. Additionally, Touray has expressed fear that she will face torture and persecution in Sierra Leone. *See* Touray Decl. ¶ 6. Analyzing materially analogous facts, other courts have found that third-country removal would violate due process. *See, e.g., D.J.R.R.*, 2026 WL 1746716, at *9; *Sagastizado*, 802 F. Supp. 3d at 1012–13; *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025); *see also D.V.D.*, 821 F. Supp. 3d at 153–165 (reasoning that the third-country removal policy systemically violates due process).

The Court holds, therefore, that the government's plan to remove Touray to Sierra Leone, without permitting her to "pursue withholding of removal through reopened removal proceedings before an immigration judge" violates due process. *Castillo Rivas*, 2026 WL 295705, at *5. Each *Mathews* factor weighs in Touray's favor: (1) the private interest is significant, as Touray fears torture and persecution if removed to Sierra Leone, Touray Decl. ¶ 6; (2) the risk of an erroneous deprivation is high, because Touray was provided minimal to no notice of her country of removal, *id.* ¶¶ 4–5, and the government denies that she has any right to raise an individualized fear-based claim, Opp. at 18; and (3) "while the government has a significant interest in the prompt execution of removals, there is also a strong public interest in ensuring noncitizens are not wrongfully removed to countries where they face harm," *D.J.R.R.*, 2026 WL 1746716, at *9 (citation omitted).

Without a statutory basis to detain Touray and no lawful plan for her removal, Touray's detention is unlawful. "The typical remedy for [unlawful] detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The government must, therefore, release Touray.

**CONCLUSION**

The government is directed to immediately release Touray, subject only to any conditions of supervision existing on September 23, 2026, and to transport her to this District. The government shall not detain Touray for removal to Sierra Leone without first allowing her to pursue an application for withholding of removal. The government shall not detain Touray for removal to a third country without providing notice and a meaningful opportunity for Touray to present a claim of fear of persecution or harm that complies with the due process requirements set forth in this order.

By **October 8, 2026**, at **11:59 p.m. EST**, the government shall file a letter on the docket certifying that it has released Touray, transported her to the District, and shall comply with the terms of this order.

SO ORDERED.

Dated: October 7, 2026
New York, New York

ANALISA TORRES
United States District Judge